IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERNEST H. CANLAS                  :

                                        :

   v.                             :   Civil Action No. DKC 15-0702

                                        :

METROPOLITAN LIFE INSURANCE
COMPANY                           :

**MEMORANDUM OPINION**

Presently pending and ready for review in this insurance case is a motion to dismiss filed by Defendant Metropolitan Life Insurance Company ("Defendant"). (ECF No. 9). The relevant issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.  Background**

Ernest Canlas ("Plaintiff") previously worked as a technician for two separate employers, the Metropolitan Washington Airports Authority ("MWAA") and the Kaiser Permanente Foundation Health Plan. (ECF No. 1 ¶ 10). Each employer provided Plaintiff with a group long-term disability insurance plan (the "Plans"). (ECF Nos. 1 ¶ 8; 9-2; 9-3).[1]  Although the

---

[1] In reviewing a motion to dismiss, courts may consider documents referenced or relied upon in the complaint. *Abelman v. Wells Fargo Bank, N.A.*, 976 F.Supp.2d 660, 662 n.1 (D.Md. 2013) (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th

Plans are independent from each other, Defendant is the claim administrator for both.

After suffering a total disability, Plaintiff began receiving payments under the Plans in 2014 that applied retroactively to 2013. (ECF Nos. 1 ¶¶ 11-12; 1-4, at 1-2). Plaintiff later applied for and received Social Security Disability Income ("SSDI") benefits. (ECF No. 1-5). On or around November 8, 2014, Plaintiff received a $30,651.00 lump sum for back payment of SSDI benefits owed. This lump SSDI sum accounted for monthly payments Plaintiff was owed beginning in August 2013. The monthly rate for his SSDI payments was: $2,397.90 from August through November 2013; $2,433.80 for December 2013; and $2,463.50 beginning in January 2014. (ECF No. 1-5, at 2). In December 2014, Defendant notified Plaintiff that it would reduce the amount he received under *each* Plan by the amount of his SSDI benefits. (ECF No. 1 ¶ 15). Defendant sent Plaintiff a letter stating that the "Total Amount" due as a result of overpayment on the two Plans was $73,367.63. (ECF No. 1-4, at 3). Defendant denied Plaintiff's administrative appeal of its determination. (ECF No. 1-3).

On March 12, 2015, Plaintiff filed a complaint alleging that Defendant wrongly denied payment of his benefits under the

---

Cir. 1999)). Here, Plaintiff attaches part of the Plans to the complaint and relies on their provisions. Thus, it is appropriate for the court to rely on the Plans in adjudicating Defendant's motion to dismiss.

Plans. (ECF No. 1). On July 15, 2015, Defendant filed the pending motion to dismiss. (ECF No. 9). After Plaintiff failed to respond timely in opposition, the court sent notice to Plaintiff's counsel requesting that he promptly file a response or advise the court if no opposition will be filed. (ECF No. 11). To date, Plaintiff has not responded.

**II. Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir.

1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal,* 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

**III. Analysis**

    **A.   Defendant's Ability to Reduce SSDI From Each Plan**

The primary argument in Plaintiff's complaint is that Defendant incorrectly reduced payment under *both* Plans by the amount of SSDI benefits he received, effectively doubling the reduction. (ECF No. 1 ¶ 16). Plaintiff asserts that applying the reduction to both Plans is "contrary to the plan provisions, . . . and is on its face arbitrary and capricious." (*Id.* ¶ 27). Defendant contends that the reductions were proper because the unambiguous language in each Plan separately allows for a reduction in benefits based on SSDI payments.

Administrators of plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA") must "look solely at 'the directives of the plan documents' in determining how to disburse benefits. . . . In other words, a claim for benefits must

4

'stand [] or fall[] by the terms of the plan.'"[2] *Boyd v. Metro. Life Ins. Co.*, 636 F.3d 138, 140 (4th Cir. 2011) (quoting *Kennedy v. Plan Adm'r for DuPont Savs. & Inv. Plan*, 555 U.S. 285 (2009)).  A plan administrator, such as Defendant, must administer each plan in accordance with its respective language. *See Renfro v. Funky Door Long Term Disability Plan*, 686 F.3d 1044 (9th Cir. 2012); *Isner v. Minnesota Life Ins. Co.*, 677 F.Supp.2d 950 (E.D.Mich. 2009).  Indeed, a plan administrator has a separate fiduciary duty to each plan it administers. 29 U.S.C. § 1104(a)(1).

Defendant cites two cases that support its decision to reduce Plaintiff's benefits under both Plans.  In *Renfro*, the United States Court of Appeals for the Ninth Circuit upheld the district court's grant of summary judgment for a defendant that, as here, deducted the plaintiff's SSDI benefits from two separate plans.  686 F.3d at 1052-54.  Much like Plans here, "[n]either of the Plans contains any language that makes an exception for this deduction in a case where an employee is covered under two separate plans.  The plain language of the

---

[2] The MWAA plan is not governed by ERISA because it is a "governmental plan."  29 U.S.C. § 1002(32); *see also Canady v. Washington Metro. Area Transit Auth.*, 909 F.Supp. 324, 327 (D.Md. 1995) (holding that ERISA does not apply to a Washington Metropolitan Area Transit Authority employee's insurance plan). This distinction is irrelevant for the current discussion. Under Maryland law, the interpretation of the plan similarly would be governed by the plain meaning of its unambiguous terms. *See Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008).

Plans expressly mandates the actions that [the defendant] took." *Id.* at 1053. The Ninth Circuit also held that the fact that one entity administered both plans "does not detract from the fact that [the plaintiff] was covered under two different plans," each of which must be read separately. *Id.* at 1054. Similarly, in *Isner*, the district court granted the defendant's motion to dismiss a suit alleging a similar "double-offset." 677 F.Supp.2d at 957-58. The court noted that, although the result may be severe, "courts do not have the power to redraft insurance contracts in order to palliate the effects of considered language on the occasional hard case." *Id.* at 957 (citations and internal quotation marks omitted). The court granted the motion to dismiss because "[t]he plans expressly authorize [reduction] of all Social Security benefits, without regard for whether any other plan [reduces] the same benefits [and because] . . . each plan 'has the absolute right to enforce its contract' with Plaintiff, even if the result is harsh." *Id.* at 958 (quoting *McBarron v. S & T Indus., Inc.*, 771 F.2d 94, 98-99 (6th Cir. 1985)).

The courts' reasoning in *Renfro* and *Isner* on nearly identical facts is persuasive. Here, the language of both Plans expressly states that Defendant "will reduce [Plaintiff's] Disability benefit by the amount of All Other Income." (ECF Nos. 9-2, at 44; 9-3, at 41). "Other Income" includes any

6

benefits that Defendant receives because of his disability, such as benefits under the "Federal Social Security Act." (*Id.*). The clear, unambiguous language of each Plan mandates that Defendant reduce Plaintiff's benefit by the amount he receives in SSDI. Accordingly, Plaintiff has not stated a claim that Defendant improperly administered the Plans by improperly reducing the amount of SSDI benefits from each Plan.

### B. Calculation of Reduction

Plaintiff also asserts that Defendant calculated the reduction incorrectly or negligently. (ECF No. 1 ¶ 16). Plaintiff contends that the alleged overpayment of $73,367.00 is more than he received in SSDI benefits from August 2013 through October 2014. (ECF Nos. 1 ¶ 18; 1-4, at 1). Defendant counters that this "fails to account for additional SSDI benefits that Plaintiff received after the initial lump sum payment from SSDI." (ECF No. 9-1, at 4 n.4). Rounding down to the nearest dollar, Defendant asserts that it reduced Plaintiff's benefits under each Plan by the following: $2,397 from August through December 2013 and $2,427 each month thereafter starting in January 2014. (ECF No. 1-3, at 3).[3]

Defendant sent Plaintiff a letter regarding the reduction of benefits under both Plans. Although the letter distinguishes

---

[3] Defendant did not include the cost-of-living adjustment in its reduction calculation (ECF No. 9-1, at 4 n.3), but these amounts otherwise comport with the amounts Plaintiff received in SSDI (*see* ECF No. 1-5, at 2).

7

between two different claim and group numbers, it is not clear to which Plan each section of the letter refers because both sections reference the "Metropolitan Wash. Airports Ath Disability Group Plan." (*See* ECF No. 1-4, at 1, 2). Claim number 611305216861 appears to be calculated correctly. Each month is reduced by the appropriate amount of SSDI benefits that Plaintiff received. Defendant provides a clear, detailed calculation as to how it reached the $28,609.53 reduction under this Plan. Defendant's calculations for claim number 701306216840 are not as clear. This section of the letter initially states that Plaintiff was overpaid by the gross amount of $25,973.30. (*Id.* at 3). This sum is not, however, supported by the rest of Defendant's letter, which appears to include incorrect calculations and contradicts the initial figure. For example, a chart used for calculations asserts that Plaintiff was paid $3,411.44 under this Plan each month from January through October 2014. (*Id.*). In this chart, Defendant seeks to reduce the monthly amount by $3,070.43, significantly more than the amount that Plaintiff received in SSDI benefits.

In all, this portion of the letter indicates that Defendant seeks to reduce Plaintiff's benefits under this plan by $44,758,10. It appears that the initial $25,973.30 figure for the second plan may be correct, which when added to the $28,609.53 calculation for the first Plan, would mean that

Plaintiff was actually overpaid by $54,582.83. However, the letter itself notes that the "Total Amount Due" is $73,367.63, and the chart indicates that Defendant applied an excessive reduction to Plaintiff's monthly payments. (*Id.*). Taking the factual allegations in the complaint as true, and examining the record before the court at the motion to dismiss stage, Plaintiff has stated a claim, under 29 U.S.C. § 1132, that Defendant incorrectly calculated the amount of overpayment and thus withheld the incorrect amount from Plaintiff's monthly benefits. Accordingly, Defendant's motion to dismiss will be denied as to its calculation of the reductions in benefits under Plaintiff's plans.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant will be granted in part and denied in part. A separate order will follow.

                                                    /s/
                                     DEBORAH K. CHASANOW
                                     United States District Judge